IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–01501–RMR–MDB

ELLIS S. BELFER,

      Plaintiff,

v.

ARLINGTON CAPITAL PARTNERS, LP,

      Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Arlington Capital Partners, LP's ["Arlington Capital"] Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2) and for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6). (["Motion to Dismiss" or "Motion"], Doc. No. 8.) Mr. Belfer filed a response to the Motion to which Arlington Capital has replied. (["Response"], Doc. No. 13; ["Reply"], Doc. No. 15.) For the following reasons, the Court RECOMMENDS that the Motion to Dismiss be GRANTED.

## I.      SUMMARY FOR *PRO SE* PLAINTIFF

After reviewing your Complaint, the Motion to Dismiss, and the related briefing, the Court finds it lacks personal jurisdiction over Arlington Capital. This means that, based on the allegations you present, the Court lacks the legal authority to render a judgment against Arlington Capital. Accordingly, without addressing the merits of your substantive claim, the

Court recommends that the presiding District Court judge dismiss your case without prejudice. This means you would have the ability to refile the case in the appropriate district if you so choose. This is only a summary of this Recommendation; the entire Recommendation is set forth below.

## II.    STATEMENT OF THE CASE

Beginning April 28, 2021, until his termination on May 19, 2022, Mr. Belfer worked as an engineer for La Jolla Logic, Inc., a San Diego-based corporation specializing in cybersecurity. ["LJL"] (Doc. No. 2 at 1–2); *About Us*, LA JOLLA LOGIC, https://lajollalogic.com/about-us/ (accessed Jan. 20, 2023). This suit arises out of Mr. Belfer's termination.

During the relevant period, LJL acted as a subcontractor for MCR LLC ["MCR"]. MCR is owned in whole or in part by Arlington Capital, a private equity firm. (Doc. No. 2 at 4); *see Arlington Capital Partners Announces the Acquisition of MCR*, ARLINGTON CAPITAL PARTNERS, https://arlingtoncap.com/news/arlington-capital-partners-announces-the-acquisition-of-mcr/ (Aug. 24, 2021) (accessed Jan. 20, 2023); *Arlington Capital Partners Signs Definitive Agreement to Acquire Systems Planning & Analysis, Inc. and Combine it with MCR, LLC*, SYSTEMS PLANNING AND ANALYSIS, INC., https://spa.com/news-insights/arlington-capital-partners-signs-definitive-agreement-to-acquire-systems-planning-analysis-inc-and-combine-it-with-mcr-llc/ (Oct. 6, 2021) (accessed Jan. 20, 2023) (detailing how MCR has since merged with Systems Planning Analysis, Inc.). Arlington Capital was formed in the State of Delaware, with a principal place of business in Chevy Chase, Maryland. (Doc. No. 8 Ex 1.)

LJL worked on MCR's federal contract with the United States Space Force, in connection with a "Space Systems Command[] project called 'Kobayashi Maru,'" based out of Los Angeles

Air Force Base. (Doc. No. 2 at 3). As part of his employment with LJL, Mr. Belfer was assigned to work LJL's subcontract with MCR as a "DevSecOps Engineer in the Toolchain team in the Platform Organization." (Doc. No. 2 at 3.) Mr. Belfer worked on the project remotely, from Pueblo, Colorado. (*Id.* at 4.)

Mr. Belfer alleges that on Friday, March 13, 2022, he was contacted by his LJL supervisor, James Thomas, via Microsoft Teams. (*Id.* at 5.) Mr. Thomas wished to discuss "an issue with [P]laintiff's leadership of that Friday's retro meeting." (*Id.*) Plaintiff refers to the Friday meeting as the "retro meeting." (*Id.* ("[R]etro is the name of an end of week Agile software development methodology exercise where the concerns of the team are discussed.").) Apparently, the retro meeting involved various people and was led Plaintiff. (*Id.*) Plaintiff alleges that he was tapped to "run the retro meeting by Nic Werner, the team's project manager." (*Id.*) Plaintiff alleges that before he responded to Mr. Thomas's message about the retro meeting, he received a second message, this time from Steven Hernandez, a "new member of the [LJL] Toolchain team" who had also been in the retro meeting. Mr. Hernandez's message read, "[h]ey Ellis, I wanted to [be] able to provide some 1 on 1 feedback with how retro was handled. Are you open to it?" (*Id.*) Mr. Belfer responded that he was open to the discussion and connected with Mr. Hernandez via a "voice conversation." (*Id.*) During the conversation, Mr. Hernandez allegedly told Mr. Belfer that Mr. Hernandez and another team member had been "bullied" and "physiologically abuse" (sic) by Mr. Belfer during the retro meeting. (*Id.*) Mr. Belfer defended himself from the accusation and "suggested that Mr. Hernandez take the matter to his contracting house's Human Resource Department." (*Id.* at 5–6.)

Then, shortly after speaking with Mr. Hernandez, Mr. Belfer had a phone conversation with Mr. Thomas. (*Id.* at 6.) Mr. Belfer alleges that "MCR Federal's Director, Space and Intelligence Division – Kobayashi Maru, Mr. Sylvan Edwards … repeated Mr. Hernandez's false statement to Mr. Thomas and … ordered the plaintiff removed from the Kobayashi Maru project" by May 16, 2022.[1] (*Id.*) Mr. Belfer was allegedly removed from the Kobayashi Maru project on May 16, 2022, and then "laid off" from LJL on May 19, 2022. (*Id.* at 7.)

On the basis of these allegations, Mr. Belfer brings a claim for defamation against Defendant.[2] (*Id.* at 8–10.) In its Motion, Defendant contends that the Court lacks personal jurisdiction over it pursuant to F.R.C.P. 12(b)(2) or, in the alternative, that Mr. Belfer has failed to state a claim pursuant to F.R.C.P. 12(b)(6). (Doc. No. 8.)

Plaintiff originally initiated this action in Pueblo County District Court. On June 15, 2022, Defendant removed the action to federal court on the basis of diversity jurisdiction. (Doc. No. 1 at 2–3 (asserting that the parties are completely diverse and that the amount in controversy exceeds the $75,000 statutory minimum).) On June 23, 2022, the Honorable Scott T. Varholak issued an Order to Show Cause, stating that "the Notice of Removal is insufficient to establish

---

[1] Mr. Belfer does not describe the exact statement(s) made by Mr. Edwards. Mr. Belfer implies that the statements were similar in nature to those made to him by Mr. Hernandez. (*See* Doc. No. 2 at 5–6.)

[2] Though Mr. Belfer cites Colo. Rev. Stat. § 13-25-124 as providing the private right of action for his claim, his defamation claim is grounded in common law. *See Keohane v. Stewart*, 882 P.2d 1293 (Colo.1994). Section 13-25-124 is part of the Colorado Rules of Evidence, setting forth what a Plaintiff must allege in a Complaint for libel or slander. *See* Fotios M. Burtzos, *The Other Rules of Evidence*, COLO. LAW., 9-1995, at 2169, 2172 ("A complaint for libel or slander does not need to set forth any extrinsic facts to show that the defamatory material applies to the plaintiff. All that the plaintiff needs to allege is that the defamatory material was published or spoken and that it concerned him or her." (citing Colo. Rev. Stat. § 13-25-124)).

complete diversity as it fails to adequately establish the citizenship of Defendant." (Doc. No. 9 at 2.) Judge Varholak noted that, though Arlington Capital purports to be incorporated, it continues to reference itself using the abbreviation for "Limited Partnership," LP. In response, Defendant submitted the affidavit of Brain Foist, the Chief Administrative Officer of Arlington Capital. (Doc. No. 13 Ex A.) Mr. Foist reiterated Arlington's previous assertion, that it is incorporated in the State of Delaware. (Doc. No. 13.) However, Mr. Foist also declared that no Arlington Capital Partner is domiciled in Colorado. (*Id.*); *see Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990) (holding that a limited partnership has the citizenship of each of its partners, whether general or limited). On the basis of these representations, the Court discharged the Order to Show Cause. (Doc. No. 14.)

### III.   LEGAL STANDARD

#### A.  Federal Rule of Civil Procedure 12(b)(2)

"The purpose of a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure is to determine whether the Court has personal jurisdiction." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021). "Because a court without jurisdiction over the parties cannot render a valid judgment, [the court] must address Defendants' personal jurisdiction argument before reaching the merits of the case." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010 (1985). To carry the burden at this stage, "plaintiffs need only make a prima facie showing of personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir.

2008) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995)). "The plaintiff may

make this prima facie showing by demonstrating, via affidavit or other written materials,"

including the well-pleaded allegations of a complaint, "facts that if true would support

jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091; *J.L.*, 521 F.Supp. 3d at

1058.

      "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a

plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."

*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir.1999). "Colorado's

long arm statute is coextensive with constitutional limitations imposed by the due process clause.

Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute

authorizes jurisdiction over a nonresident defendant." *Day v. Snowmass Stables, Inc.*, 810

F.Supp. 289, 291 (D.Colo.1993). Personal jurisdiction comports with due process where a

defendant has minimum contacts with the forum state and where those contacts are such that

jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945).

      Minimum contacts may be established under the doctrines of general jurisdiction or

specific jurisdiction. General jurisdiction exists when a defendant maintains "continuous and

systematic general business contacts" in the state. *J.L.*, 521 F.Supp. 3d at 1059 (citing *OMI*

*Holdings, Inc.*, 149 F.3d at 1091. On the other hand, "[s]pecific jurisdiction is present where the

defendant has purposefully directed its activities at the residents of the forum and the litigation

results from injuries that arise out of or relate to those activities." *J.L.*, 521 F.Supp. 3d at 1059

(citing *Soma Med., Inc.*, 196 F.3d at 1298).

**B. *Pro Se* Plaintiff**

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines*

*v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court

may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v.*

*Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113

F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156,

1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the

absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to

an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## IV.    ANALYSIS

**A. Personal Jurisdiction**

Arlington Capital first challenges the Court's jurisdiction over it, asserting that the firm

lacks the requisite minimum contacts with the State of Colorado to confer personal jurisdiction

through general jurisdiction, specific jurisdiction, or jurisdiction through its subsidiary-parent relationship with MCR. The Court will address each basis for personal jurisdiction in turn.

### 1. General Jurisdiction[3]

"General jurisdiction requires that a defendant have contacts with the forum 'so continuous and systematic as to render [it] essentially at home in the forum State.'" *J.L.*, 521 F.Supp. 3d at 1069 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In the case of a corporate defendant, "[t]he 'paradigm' forums in which a corporate defendant is 'at home,' ... are the corporation's place of incorporation and its principal place of business." *Id.* (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)). Likewise, some courts which have considered personal jurisdiction and certain unincorporated entities, such as a limited partnership, have found the analysis is virtually identical, concluding the partnership axiomatically at home in its place of formation and principal place of business. *See In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n. 14 (S.D. Cal. 2018) (considering the court's personal jurisdiction over a limited partnership and following "*Daimler*'s two-part paradigmatic location approach for general jurisdiction and tests both the place of organization and the principal place of business"). Other courts have simply attempted to identify where the unincorporated entity could be considered "fairly regarded as at home,"

---

[3] As noted above, Arlington Capital's status as a limited partnership or corporation is not entirely clear based on its filings. (*See* Doc. No. 13 Ex A (saying Arlington Capital is "incorporated in the State of Delaware" but explaining that the firm has "general and limited partners" and continuing to use the suffix "LP"). The Court independently reviewed the Delaware Secretary of State database which showed Arlington Capital as "Limited Partnership." *Arlington Capital Partners V, L.P.*, STATE OF DELAWARE, https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx, (accessed Jan. 27, 2023.) However, as discussed below, the Court does not believe this distinction has any tangible difference in its personal jurisdiction analysis.

without considering the principal place of business—place of organization dichotomy. *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1344 (S.D. Fla. 2017). Regardless, the Court must find "continuous and systematic" contacts with the State of Colorado to find general personal jurisdiction over Arlington Capital.

Here, the Complaint asserts that Arlington Capital is a "Washington, DC-area (sic) private equity firm" with a "business address" in Chevy Chase, Maryland. (Doc. No. 2 at 4.) In its response to the Order to Show Cause, Arlington Capital submitted an affidavit that clarifies its "domicile," saying that the firm is "incorporated" in Delaware and has a principal place of business in Maryland. (Doc. No. 13 Ex A); *see TH Agric. & Nutrition, L.L.C. v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (a court may consider affidavits in determining if it has personal jurisdiction over a defendant). Arlington Capital was not formed nor incorporated in Colorado, nor does it have a principal place of business in this state. Further, the Complaint puts forward no allegations which would come close to constituting "continuous and systematic" contacts with the state. (*See* Doc. No. 2 at 4; Doc. No. 8 at 6 ("Arlington has no offices, directors, board members, or employees in Colorado. Arlington is not even registered to conduct business in Colorado." (internal citation omitted)).)  Thus, Arlington Capital argues, and the Court agrees, that the court cannot assert personal jurisdiction over Arlington Capital on the basis of general jurisdiction.

**Specific Jurisdiction**

    **a.  Arlington Capital**

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *J.L.*, 521 F.Supp. 3d at 1070 (quoting *Bristol-Myers*

*Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)). This analysis is two-pronged. "First, the Court must determine whether defendant has such minimum contacts with Colorado that defendant 'should reasonably anticipate being haled into court' here." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For this prong, the Court "determine[s] whether defendant purposefully directed its activities at residents of the forum, and whether plaintiff's claims arise out of or results from "actions by ... defendant ... that create a substantial connection with the forum State." *Id.* (internal citation omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987)). "Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 113).

Here, the complained of conduct contains no allegations connecting Arlington Capital itself to the State of Colorado. Consequently, there are no Arlington Capital contacts by which Plaintiff's claim can "arise out of," and thus, Plaintiff has not established the Court's specific jurisdiction over Arlington Capital under a standard minimum contacts analysis.

### b.  Subsidiary, MCR

However, the Complaint does assert that MCR—the entity that employs the individual who allegedly defamed Mr. Belfer—is a subsidiary of Arlington Capital. (Doc. No. 2 at 4.) And Arlington Capital concedes this. (*See* Doc. No. 8 at 7 (calling Arlington Capital the "parent" of MCR).)

Typically, and "[f]or purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary ….'" *Good v. Fuji Fire & Marine, Ins. Co.*, 271 F. App'x 756, 759 (10th Cir. 2008) (quoting *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir. 1974)). "The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary." *Rosenberg v. Deutsche Bank AG*, No. 11-CV-02200-WJM-CBS, 2012 WL 3744632, at *6 (D. Colo. May 22, 2012), *report and recommendation adopted sub nom. Rosenberg v. Deutsche Bank A.G.*, No. 11-CV-02200-WJM-CBS, 2012 WL 3744631 (D. Colo. Aug. 28, 2012) (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)); *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F3d 118, 139 (1st Cir. 2006) ("There is a presumption of corporate separateness that must be overcome by clear evidence …"). But under certain conditions, a subsidiary's actions in a forum state may be imputed to the parent entity for the purpose of a personal jurisdiction analysis. In the case of a parent-subsidiary relationship, courts look to the relationship in question, asking whether the subsidiary is "so dominated" by the parent that it is effectively an "alter ego" of the parent. *See Daimler AG v. Bauman*, 571 U.S. 117, 134–35 (2014). If the subsidiary essentially acts as the parent's alter ego, the subsidiary's actions are attributed to the parent when conducting a "minimum contacts" analysis.

In Colorado, courts consider a number of factors to determine whether to exercise jurisdiction over a non-resident parent corporation based on the contacts of its subsidiary, including whether:

> (1) [t]he parent owns all the stock; (2) both [entities] have common directors and officers; (3) the parent finances the subsidiary; (4) the parent causes the

> subsidiary's incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays salaries or expenses of the subsidiary; (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary; (8) directors and officers do not act independently in the interests of the subsidiary; (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed; (10) distinctions between the parent and subsidiary ... are disregarded or confused; [and] (11) subsidiaries do not have full boards of directors.

*Griffith v. SSC Pueblo Belmont Operating Co. LLC*, 381 P.3d 308, 313 (Colo. 2016), *as modified on denial of reh'g* (Oct. 17, 2016) (quoting *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1378 n.4 (10th Cir. 1980)). In an alter ego analysis, "no one factor is determinative." *Powers v. Emcon Assocs., Inc.*, No. 14-CV-03006-KMT, 2017 WL 4075766, at *3 (D. Colo. Sept. 14, 2017). Instead, the Court looks to the entirety of the allegations and asks whether the subsidiary was functionally "doing the business of" or acting as "a mere instrumentality" for the parent rather than acting as a separate but related entity. *Warad West, LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015); *Griffith*, 381 P.3d at 313.

Here, Mr. Belfer alleges that the Managing Partner of Arlington Capital, David Wodlinger, sits on the board of Systems Planning and Analysis—the entity with which MCR has since merged. (Doc. No. 11 at 4–5); *see Griffith*, 381 P.3d at 313 ("(2) both [entities] have common directors and officers"). It appears Arlington Capital concedes this point. (*See* Doc. No. 15 at 3–4.) Mr. Belfer also alleges, and Arlington concedes, that Arlington Capital was "an owner" of MCR, but it is not clear whether Mr. Belfer alleges that Arlington Capital owned "all the stock" of MCR. (Doc. No. 2 at 4); *see Griffith*, 381 P.3d at 313 ("(1) [t]he parent owns all the stock"). Mr. Belfer does not address any of the remaining *Griffith* factors.

As Arlington Capital persuasively points out, several courts, including the Tenth Circuit, have already considered an alter ego theory supported only by the allegation that the parent and subsidiary shared a board member or high-ranking officers. (Doc. No. 15 at 4.) These courts have concluded that such an arrangement, standing alone, does not establish that a subsidiary was the parent's alter ego. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) ("Mr. Benton has not alleged nor produced evidence to show that Cameco, Inc., is the general agent or alter ego of Cameco. His allegation that 'there is an overlap of current and former officers and directors of Cameco and Cameco, Inc.'—an overlap that actually consists of one common officer—is insufficient proof." (internal citation omitted)); *United States v. Friedland,* 173 F. Supp. 2d 1077, 1092 (D. Colo. 2001) (finding that overlapping directors and officers is insufficient to warrant piercing the veil).

Further, and even assuming that Arlington Capital wholly owned MCR, this, in combination with one shared officer/director, is still insufficient to show that MCR was the alter ego or a mere instrumentality of Arlington Capital. *See Benton*, 375 F.3d at (finding that the subsidiary, which shared a common officer with the parent and was "wholly owned" by the parent, was not an alter ego for purposes of personal jurisdiction). *Cf. Flank Oil Co. v. Cont'l Oil Co.*, 277 F. Supp. 357, 360 (D. Colo. 1967) (finding that a subsidiary was an alter ego for the parent where the plaintiff alleged, among other several things, the it owned 100% of the subsidiary's stock; chose all of the subsidiary's directors; loaned money to the subsidiary to fulfill short-term cash needs; contributed more than $150,000,000 in assets to the subsidiary; required the subsidiary to submit its projected annual budget and other periodic financial statements to its 'Investment Advisory Committee' for its approval; and tasked certain parent

directors with consulting the subsidiary and making recommendations on important policy matters). Because the Complaint contains only hazy allegations of ownership, and makes one lone affiliated persons link (the managing partner of the parent sits on the board of an entity that merged with the subsidiary), the Court finds that Mr. Belfer has failed to meet his burden with respect to personal jurisdiction and the Defendant has sufficiently carried its burden on the Motion. Accordingly, the Court declines to address Defendants' alternative arguments and recommends that the Motion to Dismiss be granted.

## IV.    CONCLUSION

The Court **RECOMMENDS** that Arlington Capital's Motion to Dismiss be **GRANTED** and that Mr. Belfer's Complaint be dismissed without prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of January, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge